U.S. DISTRICT COURT
DISTRICT OF VERMONT
FILED

2016 AUG 18 PM 1:40

CLERK

BY ᴜɴᴡ
DEPUTY CLERK

UNITED STATES DISTRICT COURT
FOR THE
DISTRICT OF VERMONT

MICHAEL DAVIS, )
)
    Plaintiff, )
)
v. ) Case No. 2:15-cv-152
)
KOFFEE KUP BAKERY, INC., )
)
    Defendant. )

**OPINION AND ORDER DENYING DEFENDANT'S MOTION
FOR SUMMARY JUDGMENT**
(Doc. 19)

    Plaintiff Michael Davis alleges that in terminating his employment, Defendant Koffee Kup Bakery, Inc. discriminated against him on the basis of his age in violation of the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 623(a)(1), and the Vermont Fair Employment Practices Act ("VFEPA"), 21 V.S.A. § 495(a)(1). Pending before the court is Defendant's motion for summary judgment (Doc. 19), which Plaintiff opposes.[1] On April 12, 2016, the court held oral argument, deferred judgment on the pending motion, and permitted the parties to conduct limited additional discovery and file supplemental briefing. On July 20, 2016, after denying Defendant's motion to strike Plaintiff's supplemental briefing, the court took the pending motion under advisement.

    Plaintiff is represented by James G. Levins, III, Esq. Defendant is represented by Kerin E. Stackpole, Esq., and Emily C. Adams, Esq.

**I.    The Undisputed Facts.**

    Plaintiff was employed by Defendant as a Route Sales Representative ("RSR") at its Rutland, Vermont location (the "Rutland Depot") from June 8, 1987 until June 28, 2014. As a RSR, Plaintiff delivered baked goods to stores on a designated delivery route.

---

[1] Defendant's original motion for summary judgment was based on Plaintiff's failure to respond to requests to admit.

When Plaintiff began working for Defendant, he was forty-one years old. When his employment ended on June 28, 2014, he was sixty-eight years old.

In 2010 and 2011, Shaw's Supermarkets issued several notices regarding "discrepancies" in Plaintiff's deliveries. *See* Doc. 22-11 at 1-8. Nonetheless, in 2010 and 2011, Plaintiff's supervisor rated his overall job performance as 4.5 on a five-point scale, reflecting that he performed between "meet[ing] or often exceed[ing] standards in all areas[,]" and "exceptional, consistently exceeding standards." (Doc. 22-3 at 6, 12.)

On January 22, 2013, Plaintiff received a written disciplinary notice that summarized complaints regarding his stocking of products and contact with store representatives at three Shaw's Supermarkets. Plaintiff's February 2013 performance review rated his performance as 2.5 on a five-point scale, indicating that his performance fell between "[t]his RSR has one or more problem areas[, and] [i]n other respects, meets expectations[,]" and "[t]his RSR meets expectations." (Doc. 22-5 at 3.) On April 8, 2013, Plaintiff received a second written notice and a one-day suspension due to his unimproved performance at the three Shaw's Supermarkets. In November 2013, he again received a 2.5 overall rating. In December 2013, Plaintiff's supervisor, Mark Whitehead, emailed his superior, Brian Carpentier, regarding Plaintiff's performance issues, writing, "How do you control stupid?" (Doc. 50-18 at 1.)

During the fall of 2013, Mr. Whitehead visited the Rutland Depot on a monthly basis. Each time, he approached Plaintiff and asked, "when are you going to retire[?]" and "are you in good health?" (Doc. 22-4 at 5, 11.)[2] On those five occasions, Plaintiff responded that he was not ready to retire and that he was in good health. By October 2013, Plaintiff believed Mr. Whitehead "was really pushing" him to retire. (Doc. 50-15 at 6.) During Mr. Whitehead's visit to the Rutland Depot in November 2013, although the contents and nature of their conversation are otherwise disputed, Plaintiff indicated that his last day of work would be in February 2014.

---

[2] Although Mr. Whitehead denies talking to Plaintiff about retiring except on one occasion, Defendant concedes that "Plaintiff recalls Mark Whitehead asking when he was going to retire on four or five occasions between July and November 2013. . . . This questioning was limited to the phrase 'when are you going to retire.'" (Doc. 29-1 at 2, ¶¶ 13-14.)

2

In November 2013, Kevin Bedard, another RSR, suffered a workplace injury that required an extended leave of absence. Chris Allen was hired as a RSR to "ride with [Mr. Bedard] then run his route while [Mr. Bedard] is out." (Doc. 55-9 at 4.)

On or about December 13, 2013, Mr. Whitehead visited the Rutland Depot and asked Plaintiff to sign a "Voluntary Termination" form (the "December 2013 form"). (Doc. 22-9 at 1.) Plaintiff signed the December 2013 form, which stated, "I Mike Davis give notice that I will be leaving Koffee Kup Bakery as of 2/6/14. My last day of work is 2/6/14." *Id.*

On December 17, 2013, a "concerned motorist" reported that Plaintiff had "passed him on a double yellow line and road conditions were snowy[,]" and noted that "this is not the first time this [particular] truck has passed him in the same area." (Doc. 22-10 at 3) (emphasis omitted). On December 30, 2013, Plaintiff backed into the Rutland Depot, which "damaged the grab handle on the back of the truck and broke the upper marker light [] assembly." *Id.* at 4. Mr. Whitehead noted in an email to Mr. Carpentier that February 6, 2014 "cannot come quick enough." (Doc. 50-17 at 1.) The Notice of Reprimand issued with regard to the December 30, 2013 incident explained that Plaintiff had submitted his Voluntary Termination form, effective February 6, 2014, so "[n]o additional action [would] be taken." (Doc. 22-10 at 4.)

On January 5, 2014, Plaintiff's mother-in-law passed away and, as a result, Plaintiff informed Mr. Whitehead that he would not "be able to retire at this time" because he needed to pay her funeral expenses. (Doc. 55-16 at 2.) On January 20, 2014, Mr. Whitehead sent an email to Mr. Carpentier, reporting that Plaintiff "signed to retire 2/6" but would like to extend his employment, that Mr. Bedard may return to "light duty" status in February and "full time" status in May or June, and that Mr. Allen was "running [Mr. Bedard's] route and hired full time with the understanding he gets [Plaintiff's] route when he retires or when [Mr. Bedard] [is] back unrestricted." (Doc. 22-20 at 9.)

On January 21, 2014, Mr. Carpentier sent an email to Judy Schraven, Defendant's Human Resources Manager and Business Administrator, with the following comments regarding whether to grant Plaintiff's request to postpone his retirement:

> He is set to retire in February.
>
> Resignation is in.
>
> . . .
>
> I would like to allow it as long as his performance is good.
>
> He recently had an accident and a complaint which he should have got terminated for.
>
> If we do not change paperwork I would think we can just cut him anytime.

*Id.* at 12. Defendant subsequently agreed to continue Plaintiff's employment for an unspecified period of time.

On June 16, 2014, Mr. Bedard returned to full-time employment. On June 26, 2014, Mr. Whitehead visited the Rutland Depot and informed Plaintiff that delaying his retirement was no longer necessary. Plaintiff signed another "Voluntary Termination" form, effective June 28, 2014 (the "June 2014 form"). (Doc. 22-18 at 1.) Mr. Allen thereafter assumed Plaintiff's route. At the time, Mr. Allen was thirty-three years old.

Plaintiff testified in deposition that Mr. Whitehead's inquiries about his retirement and health were the only negative remarks that he recalls Defendant's employees making about his age. However, Mr. Bedard testified that he would "jokingly" make comments about Plaintiff's age, and that he and other employees occasionally said, "Mike, when are you retiring?" because he "was up there in age." (Doc. 46-4 at 3-4, 12.) Glenn Diezel, Defendant's Area Sales Manager of the Rutland Depot, testified that "a few" employees sometimes said, "Mike, why don't you retire already[.]" (Doc. 46-5 at 15.)

At the time of Plaintiff's termination, there were six RSRs at the Rutland Depot. Plaintiff was the only RSR older than sixty years of age, and was twelve years older than the next-oldest RSR, Mr. Bedard. After Plaintiff ceased working for Defendant, Defendant offered him part-time merchandising work that would have required him to stock shelves one day per week.

## II.   The Disputed Facts.

Plaintiff disputes whether his signature on the two "Voluntary Termination" forms was, in fact, voluntary. He asserts that prior to signing the December 2013 form, Mr.

4

Whitehead "kept hounding [him] about retirement, [he] just had enough, enough harassment." (Doc. 22-4 at 10.) He contends that he signed the June 2014 form only because he reasonably thought he was being fired. He additionally contends that Mr. Whitehead told him that June 28, 2014 would be his last day of employment.[3]

As further evidence that his resignation was involuntary, Plaintiff points to Defendant's July 16, 2014 statement to the Vermont Department of Labor that: "[e]mployment ended after [Plaintiff] had been informed of numerous performance issues and after he had offered his resignation earlier in the year." (Doc. 50-8 at 3.) Defendant answered in the affirmative when asked whether there were "warnings issued about conditions leading up to the discharge[.]" *Id.* Defendant's submission to the Equal Employment Opportunity Commission ("EEOC"), which was signed by Defendant's counsel, contains a similar recitation of the facts leading up to Plaintiff's cessation of employment:

> [O]n or about December 17, 2013, Mark Whitehead, Mr. Davis'[s] supervisor, spoke with Mr. Davis about the concerns Koffee Kup had regarding his job performance. During this meeting, Mr. Whitehead indicated that based on Mr. Davis'[s] continued performance issues, Koffee Kup had decided to terminate his employment. Mr. Whitehead gave Mr. Davis the option to resign or have his employment terminated. In response, Mr. Davis voluntarily offered his resignation, but asked that his resignation date be pushed out to February 6, 2014, due to his own financial concerns and needs. . . . February 6, 2014 was supposed to be Mr. Davis'[s] last day. However, he continued to work for Koffee Kup for several more months, as Koffee Kup had a high demand for RSRs and at the time was understaffed. On June 26, 2014, Mr. Davis approached Mr. Whitehead and indicated that

---

[3] Plaintiff relies on his wife's affidavit wherein she avers that she overheard a call on June 25, 2014 between Plaintiff and Mr. Whitehead in which Mr. Whitehead told Plaintiff "that it was time to retire, time to enjoy life, and that [Defendant] was worried about his health." (Doc. 22-2 at 3, ¶ 5.) Defendant argues that Sharon Davis's affidavit is inadmissible hearsay. A party "cannot rely on inadmissible hearsay in opposing summary judgment[] absent a showing that admissible evidence will be available at trial." *Burlington Coat Factory Warehouse Corp. v. Esprit De Corp.*, 769 F.2d 919, 924 (2d Cir. 1985) (citations omitted). "[T]he proponent of the evidence bears the burden of showing that the evidence is admissible." *Torres v. Gristede's Operating Corp.*, 628 F. Supp. 2d 447, 470 (S.D.N.Y. 2008) (citing *Patterson v. Cty. of Oneida*, 375 F.3d 206, 219-20, 222 (2d Cir. 2004)). Plaintiff has made no such showing. As a result, the court does not consider the challenged affidavit.

5

> June 28, 2014 would be his last day. Based on Mr. Davis'[s] decision, Mr. Whitehead filled out the appropriate voluntary termination paperwork, which Mr. Davis subsequently reviewed and signed. . . . Mr. Davis' last day of work was June 28, 2014.

(Doc. 22-20 at 29-30.)

Defendant contends that its EEOC submission was factually erroneous. It points to Ms. Schraven's affidavit, in which she avers that she assisted counsel in drafting the EEOC submission and consulted with Mr. Carpentier to obtain the pertinent facts to include therein, and that she "subsequently learned through discovery in this matter that certain facts contained in [Defendant's] response to the EEOC were inaccurate." (Doc. 50-4 at 2, ¶ 14.) She explains that she now understands:

> Mr. Whitehead did not give Mr. Davis the option to resign or have his employment terminated on December 17, 2013[,] . . . that Plaintiff had executed a Voluntary Resignation form on December 12, 2013[,] [and] . . . that Plaintiff and [Mr.] Whitehead did not discuss performance on the . . . date Plaintiff executed the December 12, 2013 Voluntary [Termination] form.

*Id.* at 2, ¶¶ 15-17.

Defendant disputes the reasonableness of Plaintiff's belief that he would be terminated if he did not resign because no one informed Plaintiff that he was at risk of being terminated prior to his signing either resignation form. Although Mr. Carpentier directed Mr. Whitehead "to tell [Plaintiff] he had the option of either voluntarily terminating or having his employment terminated by Koffee Kup[,]" Mr. Whitehead did not communicate those options to Plaintiff. (Doc. 50-2 at 7.) In addition, Defendant notes that Plaintiff repeatedly expressed his desire to retire. According to Mr. Diezel's testimony, Plaintiff had "been talking about retirement during the course of [2013][,]" (Doc. 46-5 at 12), and in 2014, frequently asked, "when's [Mr. Bedard] coming back; I'd like to, you know, I'm getting tired. I'd like to retire and, . . . move on." (Doc. 55-14 at 3.) Peter Manfredi, another RSR, heard Plaintiff discuss retirement and testified that "three times he put a . . . date on his retirement, and right before the date was getting closer, he would say, well, maybe I'll stick it out another year." (Doc. 46-6 at 3.)

Defendant observes that after Plaintiff ceased his employment with Defendant, he did not seek full-time employment elsewhere.

Plaintiff does not dispute that he discussed his retirement, but characterizes the conversations as casual and occurring early in the morning while he was fatigued from loading his truck. He cites Mr. Manfredi's deposition testimony that Plaintiff's comments regarding retirement "would be like around June or July when [Plaintiff] said, oh, I'm going to probably retire by January." *Id.*

Finally, Plaintiff disputes whether his performance issues were independent grounds for termination. He notes that Mr. Whitehead testified in deposition that Plaintiff's performance was not a reason to terminate him as of December 13, 2013, but that Plaintiff would have been terminated for performance issues if he had refused to sign the June 2014 form. Plaintiff notes that Mr. Manfredi, who is thirteen years younger than him, had significant performance issues but was not terminated. *See* Doc. 50-14 at 2-9 (Mr. Manfredi testifying that he missed work for more than three months due to an accident in a company truck, received multiple notices of poor performance from Jiffy Mart, received a reprimand for his performance at Mac's store, backed into the overhead door at the Rutland Depot, backed into a pole, and received a complaint from another motor vehicle operator about his driving behavior). Mr. Whitehead characterized Mr. Manfredi's job performance as "[e]qual to" Plaintiff's job performance. (Doc. 55-5 at 21.)

III.  **Conclusions of Law and Analysis.**

    A.  **Standard of Review.**

Summary judgment must be granted when there is no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). The moving party always "bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material

fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (internal quotation marks omitted).

"Once the moving party demonstrates that there are no genuine issues of material fact, the nonmoving party must come forth with evidence sufficient to allow a reasonable jury to find in [its] favor." *Spinelli v. City of New York*, 579 F.3d 160, 166 (2d Cir. 2009) (internal quotation marks omitted). "Thus, a nonmoving party can defeat a summary judgment motion only by coming forward with evidence that would be sufficient, if all reasonable inferences were drawn in [its] favor, to establish the existence of [an] element at trial." *Id.* at 166-67 (internal quotation marks omitted). There is no genuine dispute where "the record taken as a whole could not lead a rational trier of fact to find for the non-moving party[.]" *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

The Second Circuit has "emphasized that trial courts must be especially chary in handing out summary judgment in discrimination cases, because in such cases the employer's intent is ordinarily at issue." *Chertkova v. Conn. Gen. Life Ins. Co.*, 92 F.3d 81, 87 (2d Cir. 1996). "Since it is rare indeed to find in an employer's records proof that a personnel decision was made for a discriminatory reason, whatever other relevant depositions, affidavits and materials are before the district court must be carefully scrutinized for circumstantial evidence that could support an inference of discrimination." *Id.* Nonetheless, "[i]t is now beyond cavil that summary judgment may be appropriate even in the fact-intensive context of discrimination cases" because "the salutary purposes of summary judgment—avoiding protracted, expensive and harassing trials—apply no less to discrimination cases than to . . . other areas of litigation." *Abdu-Brisson v. Delta Air Lines, Inc.*, 239 F.3d 456, 466 (2d Cir. 2001) (internal quotation marks omitted).

### B.   Whether Defendant is Entitled to Summary Judgment.

Defendant seeks summary judgment on the grounds that Plaintiff voluntarily resigned and thus cannot establish an adverse employment action which is an essential element of his *prima facie* case under the ADEA and the VFEPA. In the alternative, Defendant argues that Plaintiff cannot establish that age discrimination was the reason for

8

his termination. Plaintiff opposes summary judgment, asserting that there are disputed issues of material fact regarding whether he voluntarily resigned and whether he was subjected to unlawful discrimination because of his age.

Age discrimination claims arising under the ADEA[4] and the VFEPA[5] are subject to the burden-shifting framework articulated in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). *Carpenter v. Cent. Vt. Med. Ctr.*, 743 A.2d 592, 594-95 (Vt. 1999); *see also Gorzynski v. JetBlue Airways Corp.*, 596 F.3d 93, 106 (2d Cir. 2010) (observing that the *McDonnell Douglas* framework continues to apply to ADEA cases). Pursuant to this framework:

> First, a plaintiff must establish a *prima facie* case of age discrimination. Once the plaintiff has made out a *prima facie* case, the employer is required to offer a legitimate, nondiscriminatory business rationale for its actions. If the employer articulates such a reason, the plaintiff has the burden of proving that his age was the real reason for his discharge.

*Schnabel v. Abramson*, 232 F.3d 83, 87 (2d Cir. 2000) (citations omitted); *see also Robertson v. Mylan Labs., Inc.*, 2004 VT 15, ¶¶ 24-27, 176 Vt. 356, 366-67, 848 A.2d 310, 320-21 (explaining the *McDonnell Douglas* burden-shifting framework).

To establish a *prima facie* case of age discrimination, Plaintiff must demonstrate that: "1) he was within the protected age group; 2) he was qualified for the position; 3) he was subject to an adverse employment action; and 4) the adverse action occurred under circumstances giving rise to an inference of discrimination." *Terry v. Ashcroft*, 336 F.3d 128, 137-38 (2d Cir. 2003) (internal quotation marks omitted); *Robertson*, 2004 VT 15, ¶ 25 (same). "Plaintiff's burden of proof in the *prima facie* case is minimal." *Carpenter*, 743 A.2d at 595; *see also Gorzynski*, 596 F.3d at 107 ("This burden is not a heavy one[.]").

---

[4] The ADEA makes it "unlawful for an employer . . . to fail or refuse to hire or to discharge any individual or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's age[.]" 29 U.S.C. § 623(a). Its application is limited to individuals between the ages of forty and seventy.

[5] The VFEPA makes it unlawful "[f]or any employer . . . to discriminate against any individual because of . . . age[.]" 21 V.S.A. § 495(a)(1).

### 1. Whether Plaintiff Can Establish an Adverse Employment Action.

Defendant does not challenge Plaintiff's ability to satisfy three of the four elements of his *prima facie* case. It argues, however, that Plaintiff has failed to demonstrate that he suffered an adverse employment action because he voluntarily resigned in December 2013 and affirmed his resignation in June 2014. Plaintiff counters that Defendant cannot rely on his December 2013 form because his resignation was involuntary, and because Defendant rescinded his resignation by agreeing to continue his employment thereafter. As for his June 2014 resignation, Plaintiff contends that Mr. Whitehead threatened him with termination in order to induce his signature on the form. With regard to both resignation forms, he argues that Defendant's own submissions to governmental agencies reveal that there are disputed issues of material fact regarding whether an adverse employment action occurred.

The Second Circuit "define[s] an adverse employment action as a materially adverse change in the terms and conditions of employment." *Sanders v. N.Y.C. Human Res. Admin.*, 361 F.3d 749, 755 (2d Cir. 2004) (internal quotation marks omitted). Where an employee "voluntarily quit[s][,]" there is no adverse employment action. *Evans v. Davie Truckers, Inc.*, 769 F.2d 1012, 1014 (4th Cir. 1985); *see also Cadet v. Deutsche Bank Sec. Inc.*, 2013 WL 3090690, at *11 (S.D.N.Y. June 18, 2013) ("A voluntary resignation does not constitute an adverse employment action unless the plaintiff was constructively discharged—i.e., the resignation was in fact *involuntary* as a result of coercion or duress.").

"To find that an employee's resignation amounted to a constructive discharge, the trier of fact must be satisfied that . . . a reasonable person in the employee's shoes would have felt compelled to resign." *Whidbee v. Garzarelli Food Specialties, Inc.*, 223 F.3d 62, 73 (2d Cir. 2000) (internal quotation marks omitted). "But that is not the only method of demonstrating constructive discharge. When an employer acts in a manner so as to have communicated to a reasonable employee that she will be terminated, and the plaintiff employee resigns, the employer's conduct may amount to constructive

10

...
x
q

discharge." *EEOC v. Univ. of Chicago Hosps.*, 276 F.3d 326, 332 (7th Cir. 2002). "[A] plaintiff who has accepted an employer's offer to retire can be said to have been constructively discharged when the offer presented was, at rock bottom, a choice between early retirement with benefits or discharge without benefits, or, more starkly still, an impermissible take-it-or-leave-it choice between retirement or discharge." *Vega v. Kodak Caribbean, Ltd.*, 3 F.3d 476, 480 (1st Cir. 1993) (internal quotation marks omitted).[6]

"When a constructive discharge is found, an employee's resignation is treated—for the purpose of establishing a *prima facie* case of employment discrimination—as if the employer had actually discharged the employee." *Lopez v. S.B. Thomas, Inc.*, 831 F.2d 1184, 1188 (2d Cir. 1987); *see also Ross v. City of Perry*, 396 F. App'x 668, 670 (11th Cir. 2010) ("An involuntary resignation that constitutes a constructive discharge is an adverse employment act under Title VII[.]").

In this case, although a close question, there are sufficient issues of disputed fact regarding whether Plaintiff voluntarily resigned or was pressured to do so with the veiled threat of termination to preclude summary judgment on the basis of Plaintiff's failure to establish a *prima facie* case. Defendant's own admissions support Plaintiff's version of the events. In December 2013, Mr. Carpentier directed Plaintiff's superior, Mr. Whitehead, "to tell [Plaintiff] he had the option of either voluntarily terminating or having his employment terminated" by Defendant. (Doc. 50-2 at 7.) Thereafter, Defendant twice represented to regulatory agencies that Plaintiff was given the option to either resign or be terminated. Although Defendant now seeks to retract those admissions, "'[r]esolutions of credibility conflicts and choices between conflicting

---

[6] *See also Lopez v. S.B. Thomas, Inc.*, 831 F.2d 1184, 1188-89 (2d Cir. 1987) (holding that where the employer told the employee "he would be fired at the end of the 90-day probationary period[,] . . . [a] trier of fact might find that . . . statement alone suffices to establish a constructive discharge"); *Leitgen v. Franciscan Skemp Healthcare, Inc.*, 630 F.3d 668, 673 (7th Cir. 2011) (noting that where the employee was told that "she could either resign or be fired[,]" the employee's "forced resignation constitutes an adverse employment action"); *Grey v. City of Norwalk Bd. of Educ.*, 304 F. Supp. 2d 314, 324 (D. Conn. 2004) ("[T]hreats of termination alone are sometimes sufficient to show constructive discharge."); *Doria v. Cramer Rosenthal McGlynn, Inc.*, 942 F. Supp. 937, 947 (S.D.N.Y. 1996) ("The most common constructive discharge case involves veiled or direct threats that failure to resign will result in discharge.").

versions of the facts are matters for the jury, not for the court on summary judgment.'" *McClellan v. Smith*, 439 F.3d 137, 148 (2d Cir. 2006) (quoting *United States v. Rem*, 38 F.3d 634, 644 (2d Cir. 1994)); *see also United States v. GAF Corp.*, 928 F.2d 1253, 1259 (2d Cir. 1991) ("A pleading prepared by an attorney is an admission by one presumptively authorized to speak for his principal. . . . When a pleading is amended or withdrawn, the superseded portion ceases to be a conclusive judicial admission; but it still remains as a statement once seriously made by an authorized agent, and as such it is competent evidence of the facts stated, though controvertible, like any other extra-judicial admission made by a party or his agent.") (quoting *United States v. McKeon*, 738 F.2d 26, 31 (2d Cir. 1984)).

Defendant argues that, even in the absence of the December 2013 form, there is no genuine dispute as to whether Plaintiff voluntarily resigned in June of 2014. However, Plaintiff points out that Defendant informed him that June 28, 2014 would be his last day and made it clear to Defendant's supervisors that if Plaintiff did not resign, he would be terminated. Defendant's representations to regulatory agencies, made after Plaintiff's employment ceased and made with the benefit of legal advice, reflect Plaintiff's version of the events.

Because Defendant has failed to sustain its burden of establishing that Plaintiff, as a matter of law, cannot establish he suffered an adverse employment action, summary judgment on that basis must be DENIED. *See Rupert v. City of Rochester, Dep't of Envtl. Servs.*, 701 F. Supp. 2d 430, 440 (W.D.N.Y. 2010) ("A triable issue of fact as to constructive discharge may be demonstrated by proof that an employee was presented with the decision to resign or be fired."); *Fetcho v. Hearst Conn. Post, LLC*, 103 F. Supp. 3d 207, 211-12 (D. Conn. 2015) (denying summary judgment where the defendant claimed the plaintiff "resigned voluntarily" but the "circumstances under which plaintiff's employment ended [were] in dispute"); *Madera v. Metro. Life Ins. Co.*, 2002 WL 1453827, at *6 (S.D.N.Y. July 3, 2002) (denying a motion to dismiss where the "termination was, at a minimum, a constructive discharge" because "had plaintiff not signed [a voluntary separation] agreement, he would have been fired").

12

### 2. Whether Plaintiff Can Show Pretext.

Having established that he may be able to prove an adverse employment action, Plaintiff does not challenge Defendant's ability to proffer a legitimate, nondiscriminatory reason for the termination of his employment on June 28, 2014. Plaintiff must therefore "meet [his] burden of showing a triable issue as to whether [his] age was a 'but for' cause" of the challenged adverse employment action. *Gorzynski*, 596 F.3d at 106.[7] "That age was a 'but for cause' does not mean 'that age was the [employer's] . . . *only* consideration, but rather that the adverse employment action *would not have occurred without it*.'" *Ehrbar v. Forest Hills Hosp.*, 131 F. Supp. 3d 5, 20 (E.D.N.Y. 2015) (quoting *Delaney v. Bank of Am. Corp.*, 766 F.3d 163, 168 (2d Cir. 2014) (per curiam)) (emphasis in original).

A plaintiff "may prove that [discrimination] was a but-for cause of an adverse employment action by demonstrating weaknesses, implausibilities, inconsistencies, or contradictions in the employer's proffered legitimate, non[discriminatory] reasons for its action. From such discrepancies, a reasonable juror could conclude that the explanations were a pretext for a prohibited reason." *Zann Kwan v. Andalex Grp. LLC*, 737 F.3d 834, 846 (2d Cir. 2013); *see Bonefont-Igaravidez v. Int'l Shipping Corp.*, 659 F.3d 120, 124 (1st Cir. 2011) ("Under the purview of the ADEA, pretext can be established by showing such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's offered reasons for the termination that a reasonable factfinder could rationally find them unworthy of credence and hence infer that the employer did not act for the asserted non-discriminatory reasons.") (internal quotation marks omitted). "[A]

---

[7] Both parties argue that plaintiffs alleging VFEPA claims carry a lesser burden and must establish that a reasonable juror could conclude "that the adverse job action was more probably than not caused by discrimination[.]" *Gauthier v. Keurig Green Mountain, Inc.*, 2015 VT 108, ¶ 22, 129 A.3d 108, 118. However, *Gauthier* addressed a workers' compensation retaliation claim, rather than an age discrimination claim, and did not decide whether VFEPA claims for age discrimination are subject to the more demanding "but for" standard established for ADEA claims in *Gross v. FBL Fin. Servs., Inc.*, 557 U.S. 167 (2009), and applied in *Gorzynski v. JetBlue Airways Corp.*, 596 F.3d 93 (2d Cir. 2010). The court need not decide this issue because it concludes that Plaintiff proffers sufficient evidence which, if found credible, would satisfy the higher "but for" standard applicable to ADEA claims.

13

plaintiff may rely on evidence comprising her *prima facie* case, . . . together with other evidence such as inconsistent employer explanations, to defeat summary judgment at [the pretext] stage." *Zann Kwan*, 737 F.3d at 847.

Plaintiff argues that Defendant's abandonment of the performance-based rationale it asserted before the Vermont Department of Labor and the EEOC is evidence of pretext from which a reasonable factfinder could infer that he was terminated for discriminatory reasons. In response, Defendant relies on *McCoy v. WGN Cont'l Broad. Co.*, 957 F.2d 368, 374 (7th Cir. 1992) for the proposition that defendants sued under the ADEA are not bound "to the positions they initially assert in administrative proceedings" and that asserting a different position in the course of subsequent proceedings is not "*per se* pretext for summary judgment purposes[.]"

While pretext is not automatically established where a defendant justifies a termination on different grounds than it initially asserted before regulatory agencies, "in the ordinary case, such fundamentally different justifications for an employer's action . . . give rise to a genuine issue of fact with respect to pretext since they suggest the possibility that neither of the official reasons was the true reason." *Washington v. Garrett*, 10 F.3d 1421, 1434 (9th Cir. 1993). Indeed, "[f]rom such discrepancies a reasonable juror could infer that the [subsequent] explanations given by [the defendant] . . . were pretextual, developed over time to counter the evidence suggesting age discrimination uncovered by the . . . investigation." *EEOC v. Ethan Allen, Inc.*, 44 F.3d 116, 120 (2d Cir. 1994).

Here, with the knowledge that Plaintiff was contesting the grounds of his termination, Defendant twice represented to regulatory authorities charged with investigating unlawful discrimination that Plaintiff was discharged for performance issues. His performance record included a series of complaints from customers, as well as several Notices of Reprimands issued by Defendant.[8] Although his performance

---

[8] Plaintiff contends that Defendant used the tactic of documenting minor performance issues to pressure employees to resign. He points to an email from Mr. Carpentier stating that two employees "need pressure and possible release due to poor performance." (Doc. 22-8 at 1.) "[A]

14

record, standing alone, may suggest that termination was warranted, Mr. Whitehead admitted that Plaintiff's performance issues were insufficient to justify his termination in December 2013, and that a younger employee with similar performance issues was not terminated.[9] "Especially relevant to . . . a showing [of pretext] would be evidence that . . . employees[,]" lacking the characteristic on which the plaintiff's discrimination claim is based, were "involved in acts against [the employer] of comparable seriousness . . . [and] were nevertheless retained or rehired." *McDonnell Douglas*, 411 U.S. at 804. Defendant's abandonment of its performance-based rationale may thus reveal an effort "to counter the evidence suggesting age discrimination uncovered by the . . . investigation[,]" *Ethan Allen*, 44 F.3d at 120, and a rational juror could therefore conclude that its asserted rationales are "pretext for a prohibited reason." *Zann Kwan*, 737 F.3d at 846.

Plaintiff further relies on Mr. Whitehead's repeated age-related questioning regarding his retirement and health, which occurred in close temporal proximity to the cessation of his employment. *See Sedelnik v. City of Bridgeport*, 837 F. Supp. 2d 12, 19 (D. Conn. 2011) (observing that "the Second Circuit has stated that 'the more a remark evinces a discriminatory state of mind, and the closer the remark's relation to the allegedly discriminatory behavior, the more probative that remark will be[]'") (quoting *Tomassi v. Insignia Fin. Grp., Inc.*, 478 F.3d 111, 115 (2d Cir. 2007)) (alteration omitted). Although Defendant is correct that "[a]n employer may legitimately inquire

---

jury, not a judge, should decide . . . whether that paper trail was intended to establish a pretext for discrimination." *Dupree v. UHAB-Sterling St. Hous. Dev. Fund Corp.*, 2012 WL 3288234, at *10 (E.D.N.Y. Aug. 10, 2012); *see also Krieger v. Gold Bond Bldg. Prods.*, 863 F.2d 1091, 1098-99 (2d Cir. 1988) (affirming the district court's "inference that the reasons proffered by the company for its action were not genuine reasons but merely pretext[,]" where, *inter alia*, there was evidence that the defendant company "had carefully crafted a paper trail to justify [the plaintiff's] eventual firing") (internal quotation marks omitted).

[9] Mr. Manfredi's thirteen-year age difference is sufficiently substantial to warrant an inference in Plaintiff's favor regarding the reason for Defendant's alleged disparate treatment of their performance issues. *See France v. Johnson*, 795 F.3d 1170, 1174 (9th Cir. 2015) ("We hold that an average age difference of ten years or more between the plaintiff and the replacements will be presumptively substantial[.]").

about an employee's plans so that it can prepare to meet its hiring needs[,] . . . repeated and/or coercive inquiries can clearly give rise to a reasonable inference of anti-age bias[.]" *Greenberg v. Union Camp Corp.*, 48 F.3d 22, 28 (1st Cir. 1995). As one court observed:

> [T]he [c]ourt is satisfied that [the plaintiff, Braverman,] has established discriminatory intent for summary judgment purposes. Braverman alleges that Hansen repeatedly asked and pressured him about retirement because he was approaching 65. This evidence includes: Hansen asking Braverman in early 1992 about Braverman's retirement plans; Hansen suggesting retirement when Braverman disclosed his plans for radiation treatment; and the [c]ompany providing Braverman an unsolicited and unwelcome retirement information package in the spring of 1992.

*Braverman v. Penobscot Shoe Co.*, 859 F. Supp. 596, 601 (D. Me. 1994).

Finally, Plaintiff can establish that he was the oldest RSR at the Rutland Depot by twelve years, was the only RSR older than sixty years of age, and was replaced by a thirty-three year old individual who had been previously hired to cover Mr. Bedard's route while he was recovering from a workplace injury. "Although not determinative on its own, the fact that [P]laintiff's replacement was significantly younger than him is a factor (among others) from which the jury could . . . infer[] age discrimination[.]" *Claudio v. Mattituck-Cutchogue Union Free Sch. Dist.*, 955 F. Supp. 2d 118, 135 (E.D.N.Y. 2013) (citations omitted); *see also O'Connor v. Consol. Coin Caterers Corp.*, 517 U.S. 308, 313 (1996) ("[T]he fact that a replacement is substantially younger than the plaintiff is a far more reliable indicator of age discrimination than is the fact that the plaintiff was replaced by someone outside the protected class.").

Insofar as Defendant argues that pretext on this basis is negated because it employed other individuals over the age of forty, "an employer may not escape liability for discriminating against a given employee . . . simply because it can prove it treated other members of the employee's group favorably." *Graham v. Long Island R.R.*, 230 F.3d 34, 43 (2d Cir. 2000). Nor does the fact that Plaintiff was forty-one years old when he began working for Defendant alter the analysis. At the time, Plaintiff was not "well within" the protected class, but rather, had just entered the protected class. *James v. N.Y.*

*Racing Ass'n*, 76 F. Supp. 2d 250, 255 (E.D.N.Y. 1999) (observing that "the inference of discrimination is much weaker where the plaintiff employee is well within the protected class when first hired") (internal quotation marks omitted). For similar reasons, although it is relevant that Defendant offered Plaintiff part-time employment and Plaintiff did not seek full-time employment elsewhere, those facts are not determinative and merely underscore the conclusion that the real reason for the termination of Plaintiff's employment is disputed.

Examining the evidence in the light most favorable to Plaintiff and drawing all reasonable inferences in his favor, Plaintiff has provided "more than conclusory allegations of discrimination[.]" *Schwapp v. Town of Avon*, 118 F.3d 106, 110 (2d Cir. 1997); *see also Weinstock v. Columbia Univ.*, 224 F.3d 33, 42 (2d Cir. 2000) ("The plaintiff must produce not simply 'some' evidence, but 'sufficient['] evidence to support a rational finding that the legitimate, non-discriminatory reasons proffered by the [defendant] were false[.]") (internal quotation marks omitted). A reasonable juror could therefore conclude that age was a "but for" cause of Plaintiff's termination, rendering the real reason for the cessation of Plaintiff's employment "a triable issue[.]" *Gorzynski*, 596 F.3d at 106.

## CONCLUSION

Pursuant to Fed. R. Civ. P. 56(c), because there are genuine issues of material fact that prevent the court from concluding that Defendant is entitled to judgment as a matter of law in its favor, the court DENIES Defendant's motion for summary judgment (Doc. 19).

SO ORDERED.

Dated at Burlington, in the District of Vermont, this 18th day of August, 2016.

Christina Reiss, Chief Judge
United States District Court